FRANK BOSCIA, PROSECUTOR, v. CITY OF GARFIELD, A MUNICIPAL CORPORATION IN THE COUNTY OF BERGEN AND STATE OF NEW JERSEY, JOSEPH J. NOVACK, CITY CLERK, JOHN M. GABRIEL, INDIVIDUALLY AND AS MAYOR OF THE CITY OF GARFIELD, GERARD DE MURO, TREASURER, HENRY L. JANOWSKI, INDIVIDUALLY AND AS CITY ATTORNEY OF THE CITY OF GARFIELD, PETER CIMINO, JOSEPH KOBLARZ, GUSTAV DEAK, AND SALVATORE W. BAGLOIE, INDIVIDUALLY AND AS MEMBERS OF THE COMMON COUNCIL OF THE CITY OF GARFIELD, AND VICTOR SAMUEL, DEFENDANTS.

Argued January 21, 1942—Decided March 31, 1942.

Before Justices BODINE, PERSKIE and PORTER.

For the prosecutor, *Charles Bernstein* (*Warren Dixon, Jr.,* of counsel).

For the defendants Henry L. Janowski and Victor Samuels, *James A. Major.*

For the City of Garfield and the other individual defendants, *John J. Breslin, Jr.*

The opinion of the court was delivered by

PORTER, J.  This writ brings before us for review the resolutions of the defendant municipality of September 17th, 1941, and October 15th, 1941, and all proceedings which authorized the making of a .contract between the municipality and Henry L. Janowski.

This contract engages Mr. Janowski, an attorney, to take necessary legal action to liquidate about 1,200 tax lien certificates held by the city for a stated compensation for each certificate.  The certificates represent taxes due the city of about $1,700,000.  The need of the city to collect these taxes has been pressing and the problem has been one which has engaged the attention of the city officials for several years. In 1940 the city refunded certain of its bonded indebtedness with the approval of the Department of Local Government of the State but on condition that steps be taken for the enforcement of the collection of taxes by all legal means. Finally, in pursuance with that obligation, the matter came to a head on May 9th, 1941, when the City Council adopted a resolution which provided that the city attorney, Mr. Janowski, be authorized to foreclose these tax liens at a price of $99.50 for each certificate and that a contract be entered into between the city and Mr. Janowski to carry out the terms of the resolution.  This compensation was to cover all expenses and it was to be "made by the city out of the legally available interest and principal of the municipal liens due on said tax sale certificates if and when paid, or by direct budgetary appropriations for such purposes or from sale of foreclosed property."  There was opposition to the plan in the council and a resolution to rescind the May 9th resolution was introduced at a meeting on May 21st but was defeated. The opposition seems largely to be to the amount of the compensation, it being said that other municipalities had paid

considerably less for similar work. However that may be, we are only concerned with the question of the legality of the contract which was later made. The matter again came up at a meeting of the council on September 17th when a resolution approving a formal contract carrying out the plan as approved on May 9th was adopted by the vote of the mayor after a tie vote by the council. The contract was submitted to the Department of Local Government for its approval. This approval was given conditional to certain suggested changes, one being that a certain named man should be retained by Mr. Janowski to assist in the work. These changes were submitted to the City Council and by resolution adopted October 15th, 1941, were approved and the contract modified accordingly.

The prosecutor contends that this resolution was ineffective and void because it was not passed by a vote of a majority of the whole number of the City Council as required by *N. J. S. A.* 40:172-4. The council consists of eight members. The vote was four for the adoption of the resolution and three against with one member absent. Of course a majority of the whole number of eight is five. The statute, *supra,* provides that any resolution or motion involving the expenditure of money shall be adopted by a vote of a majority of the whole number. Did this resolution involve the expenditure of money? The defendants argue that it did not because they say that no money was appropriated, that a fund would be created by the redemption of tax certificates out of which the necessary expenses and costs would be paid. We think that is a subterfuge and that the resolution was one which did involve the expenditure of money. Whether the money was appropriated by the city or whether it came out of a fund as the tax money was collected is not the important point but whether the funds were moneys otherwise belonging to the municipality. The fact is that all of the money due was for taxes and any deductions for expenses and costs under this plan of collections reduced the amount the city would otherwise receive hence it constituted the expenditure of money belonging to the municipality within the meaning of the statute. Whether or not this was a more practical method of

collecting this tax money rather than to appropriate the large sum necessary to finance the collection by other means is entirely beside the point. So, we conclude that this contract not having been adopted by a majority vote of the whole number of the Council was void and of no effect.

Having reached the conclusion that this contract is void it becomes unnecessary to pass upon other points raised by the prosecutor.

The resolution and contract under consideration will be set aside, with costs.